(69 App. Div. 231.)

### LAUE v. METROPOLITAN EL. RY. CO. et al.

(Supreme Court, Appellate Division, First Department.  February 14, 1902.)

1. ELEVATED ROAD—RESTRAINING OPERATION — REMOVAL OF ANNOYANCE — EVIDENCE—COMPETENCY.

In a suit to restrain defendants from operating an elevated steam railroad in front of plaintiff's premises, a resolution of the stockholders authorizing the issue of additional stock, and directing the proceeds to be used to change the motive power to electricity, was incompetent to prove that the company was actually engaged in changing the motive power so as to obviate some of the injurious effects.

2. SAME—CONDEMNING INJURED PROPERTY—DAMAGES.

In a suit to restrain defendants from operating an elevated steam railway in front of plaintiff's premises, the injunction issued, but was made inoperative if within a reasonable time defendants paid for the value of the right to operate the road; the amount to be paid being based on the assumption that the road would still be operated by steam. There was proof that defendants were constructing a plant which would enable them to run by electricity, but no evidence when it would be in operation, or just what the proposed plant was, how it was to be operated, or that it would cause any materially different operation of the road. *Held* insufficient to show that any of the causes contributing to plaintiff's injury would be discontinued, so as to lessen the award of damages.

3. SAME—SPECULATIVE EVIDENCE.

Testimony of defendants' engineer as to the effect on the alleged annoyance of the alleged change to electricity was properly excluded as too speculative, and not justified by competent evidence as to the nature of the proposed new system.

Appeal from special term, New York county.

Injunction by Charles Laue against the Metropolitan Elevated Railway Company and another.  Judgment for plaintiff, and defendants appeal.  Modified.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Arthur A. Gardiner, for appellants.
William R. Page, for respondent.

INGRAHAM, J.  The question upon which the defendants rely to reverse the judgment is one that has not been passed on by this court or the court of appeals.  The action is brought to restrain a continuing trespass; the trespass, as alleged in the complaint, consisting of the maintenance of the elevated railroad and the running of trains drawn by locomotive steam engines as they have heretofore done for an indefinite period; the complaint alleging that the said structure and the operation of the said railroad are intended by the defendants to be permanent; that the engines and cars operated over said structure eject smoke, cinders, ashes, soot, steam, and gas into and upon said avenue and street and plaintiff's premises, and drop grease, oil, water, cinders, ashes, and other objects upon said avenue and street and the premises of the plaintiff, and make a loud and disagreeable noise, and shake the buildings on plaintiff's premises so as to weaken them; and that such trespass

will continue indefinitely in the future, unless restrained by the order of the court. The plaintiff also alleges that the defendants intend to greatly increase the burden imposed upon the plaintiff's premises, and asks for an injunction perpetually enjoining and restraining the defendants, and each of them, from further maintaining or operating the above-described railroad in front of the plaintiff's premises, or maintaining or operating any additions to or enlargements of their present structure. The defendants deny these allega·tions of the complaint, and allege that the railroad in front of the plaintiff's premises was erected under legislative authority, and ask that, if the court determine that an injunction should issue herein restraining the defendants from continuing to maintain their structure and operate their road in front of the plaintiff's premises, such injunction be granted, subject to a condition that it shall not become operative if, within a reasonable time to be fixed, the defendants pay to the plaintiff the value of the right to maintain and operate their railroad, to be determined by commissioners of appraisal appointed in proceedings taken under the condemnation law. The action came on for trial at special term, and the plaintiff offered evidence tending to show the method of operation of the defendants' railroad, that cinders and dust were constantly thrown upon the plaintiff's premises by the passage of the trains, and that the steam from the defendants' locomotives came upon the plaintiff's premises. On behalf of the defendants it was proved that steps had been taken some time prior to the trial for the equipment of the elevated railroad with electricity, and that they are now engaged in accomplishing that object; that the first electric train was operated on the Second avenue line the day before the witness was examined. The defendants then offered in evidence a resolution of the stockholders of the railroad company approving of the issue of stock of the par value of $18,000,000, and which provided that the proceeds of this stock were to be expended and used to substitute electricity in place of steam as the motive power of the railroad, and to provide new plant and equipment. This w-s objected to by the plaintiff, the objection sustained, and the defendants excepted. Further evidence was then offered as to the progress that had been made in regard to the electrical equipment of the road, and the witness, who was an engineer employed by the defendants, after being asked as to his experience with roads operated with electricity, was asked:

"Applying that experience to the existing condition of affairs, what would be the result, in speaking of the alleged physical annoyances coming from the operation of a railroad by steam as at present, to the establishment of the electric power and the operation of the railroad by electricity?"

That was objected to, and the objection sustained, to which the defendants excepted.

The court found that the defendants had constructed in front of the plaintiff's premises an elevated railroad about the years 1879 and 1880, since which time the said structure has been operated by the defendant the Manhattan Railway Company by means of trains of cars drawn by locomotive steam engines, and is so operated now;

that the maintenance of the defendants' railroad structure has obstructed, and will continue to obstruct, the access to, and diminish the light of, the plaintiff's said premises, and the running of trains on said structure, with the escape of steam, dust, cinders, and gases, from the locomotive drawing such trains, has obstructed, and will continue to obstruct, the air which would otherwise enter said premises, and has diminished, and will continue to diminish, the light of the plaintiff's said premises. The court further found that, by the taking of the easements aforesaid, the plaintiff, from May 1, 1895, to the date of the trial, suffered a loss in rental value of said premises of $600 per year, or in all $3,333; that there has been an actual and substantial damage to the fee value, and a depreciation in the value, of said premises of the plaintiff, by the taking of so much of the said easements belonging to the said premises as have been taken by the defendants, over and above any and all general and special benefits to said premises arising from the construction, maintenance, and operation of said railroad structure, in the sum of $7,500,—and directed a judgment for the plaintiff for the recovery of the damages sustained as found, and ordered an injunction restraining the defendant from maintaining or operating the said railroad in front of the premises described in the complaint, upon condition that the injunction shall not be operative in the event that the defendants pay to the plaintiff the sum of $7,500, with interest to the date of trial.

The defendants contend that it was error to exclude this testimony to which attention has been called. The witness was allowed to testify as to what had been done by the railroad company towards changing its motive power from steam to electricity. All the testimony that the court excluded was the resolution of the stockholders of the company authorizing the issue of additional stock, and directing the proceeds to be applied to changing the motive power to electricity. It is a little difficult to see upon what principle this resolution was admissible. The passage of the resolution by the stockholders of the company was not competent to show the fact which was alone competent,—that is, that the company was actually engaged in changing the motive power, which in the future operation of the road would obviate some of the injurious effects,—and all the evidence offered to prove that fact was admitted. There were no plans submitted by the defendants showing the method to be adopted by which the road was to be operated by electricity,—nothing from which the trial court could find the effect that the changed conditions would have upon the adjacent property. I agree with counsel for the defendants that, in determining the value of the easement appropriated by the defendants, the court should take into consideration the nature of the operation of the road as proposed by the defendants. As I understand this proceeding, the court acts as it would if the defendants had commenced proceedings to condemn the interest in the street occupied and to be occupied by the defendants in the construction, maintenance, and operation of the road; and the amount to be paid to the plaintiff as a condition for allowing this elevated railroad company to continue to operate the road is to be ascertained upon

the same principle that the court would ascertain the value of the property to be taken by the proposed road, where the application was made prior to the actual construction and operation. In such case, where a portion of the property is taken by a railroad, the value of the property taken is estimated by determining what the property as a whole was worth before that portion to be appropriated by the railroad was taken, and what it is worth subject to the operation of the railroad; and the difference between these two values is the value of the property that the road takes, and that value is to be determined as of the time of the trial. It seems evident that if, prior to the trial, the road was operated by electricity, and not by steam power, it would be error for the court to base its award of permanent damages upon the injury occasioned to the property by the operation of the road in the old method which had been discontinued, rather than by the new method which the road proposed to adopt; and, in fixing the form of the conveyance to be made by the plaintiff to the defendants, the right acquired by the defendant could be limited to the operation of the road as proposed by it. But I do not see that the question is fairly raised in this case. There was proof before the court that the defendant was engaged in constructing a plant which would enable it to run by electricity, but there was no evidence as to when this plant would be in operation; no evidence to show just what the proposed plant was, how it was to be operated, or that it would cause any materially different operation from that proved to have been in existence prior to the time of the trial. There was certainly nothing to prevent the defendant from continuing to operate its railroad, and nothing was shown to the court to justify a finding that the operation would be essentially different from that before adopted. There was no competent evidence excluded which would indicate the particular method that the defendant had intended to adopt, from which the court could ascertain that any of the causes that contributed to the present injury to the plaintiff's premises would be discontinued.

The question that was asked the defendant's engineer as to what would be the effect upon the alleged physical annoyance coming from the operation of the railroad by steam, as at present, by the establishment of the electric power and the operation of the railroad by electricity, was, I think, properly excluded, as entirely too speculative, and not justified by any competent evidence as to the nature of the appliances which the defendant had intended to introduce; and, in view of the fact that all the evidence that the defendant offered as to the method of operation that it was introducing and intended to adopt was admitted, I do not think that an error was committed in refusing to receive the evidence offered.

The remaining question is whether, in the face of this testimony, the finding of the court that the running of trains on the structure, with the escape of steam, dust, cinders, and gases from the locomotives drawing such trains, will continue to obstruct the air which would otherwise enter such premises, was sustained by the evidence; but in view of the failure of the defendants to prove the particular method of operation that was contemplated, or at what time the new

method would be in operation, I do not see that error was committed that would justify a reversal of the judgment.

We think, however, that the amount allowed both for fee and rental damage was larger than was justified by the evidence. The judgment should be modified by allowing for the fee value of the property appropriated by the defendants $4,000, and for the rental damage $150 per year, and, as so modified, affirmed, without costs.

HATCH and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., and PATTERSON, J., concur in result.